## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW and SHARON MEYER, | No. 4:22-CV-01593 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| U.S. PIPELINE, INC., TRANSCONTINENTAL GAS PIPELINE COMPANY, LLC, and THE WILLIAMS COMPANIES, INC., | |
| Defendants. | |

## MEMORANDUM OPINION

### MARCH 15, 2023

Plaintiffs Matthew and Sharon Meyer are seeking to recover for damage to their property allegedly attributable to repair work on pipelines owned by Defendant Transcontinental Gas Pipeline Company, LLC ("Transco"). They have sued Transco as well as its parent company, the Williams Companies, Inc., and the independent contractor that performed the repairs, U.S. Pipeline, Inc. The Meyers allege that U.S. Pipeline negligently diverted a creek upstream from their property, and that Transco and Williams should be held vicariously liable for U.S. Pipeline's conduct.

Transco and Williams now seek to dismiss the vicarious liability claims, asserting that the pleadings do not demonstrate that Transco retained control over the work U.S. Pipeline performed or that Williams and Transco functioned as a

single entity. The Court agrees. The claims against Transco and Williams are therefore dismissed.

## I.   BACKGROUND

### A.   Factual Background

In 2021, U.S. Pipeline began repair and reconstruction work on natural gas pipelines owned and operated by Transco.[1] Specifically, U.S. Pipeline was working on a section of the pipelines that crossed the Loyalsock Creek in Fairfield Township, Lycoming County, Pennsylvania.[2] The construction site was located approximately a quarter-of-a-mile above the Meyers property.[3]

At the construction site, U.S. Pipeline installed a temporary, inflatable cofferdam in the Loyalsock Creek, which diverted the streamflow away from the construction activities.[4] According to the Meyers, although the cofferdam aided U.S. Pipeline "in its pipeline and/or stream crossing construction activities," it created a risk: "[i]n the event of a storm occurring that could result in a substantial increase in the water volume, the temporarily inflatable cofferdam needed to be deflated to prevent excessive erosion and/or damage to the stream bank."[5]

---

[1]   Doc. 1-2 (Compl.) ¶¶ 8–12.
[2]   *Id.*
[3]   *Id.* ¶ 11.
[4]   *Id.* ¶¶ 20–22.
[5]   *Id.* ¶¶ 20, 23 (cleaned up).

Between October 5 and 6, 2021, a substantial storm hit the area, causing the Loyalsock Creek to flood.[6] U.S. Pipeline failed to deflate the cofferdam prior to the storm.[7] As a result, the cofferdam "artificially diverted the Loyalsock Creek in an unnatural manner," resulting in "substantial erosion" that ultimately caused "a loss of a substantial amount of [the Meyer] property."[8] Further, the erosion of the Loyalsock Creek heightens the risk of future flood damage, as it will increase flood water depth and velocity as well as stream embankment scour.[9]

According to the Meyers, Transco "engaged the services" of U.S. Pipeline to "perform the work necessary to repair the pipelines."[10] They do not claim that Transco was directly negligent in any respect relevant to the October 2021 flooding. Instead, they assert that Transco "retained the right of control over the means, methods, and manner by which the pipeline repair work was performed," and that U.S. Pipeline "was acting as [Transco's] agent" when it allegedly altered the course of the Loyalsock Creek, failed to monitor the forecasted weather and deflate the cofferdam prior to the October 2021 storm, and diverted the flooding waters away from the construction site to the detriment of the Meyer property.[11]

---

[6] *Id.* ¶¶ 24–25.
[7] *Id.*
[8] *Id.* ¶¶ 25–28.
[9] *Id.* ¶ 29.
[10] *Id.* ¶ 42.
[11] *Id.* ¶¶ 43–46 (cleaned up).

The Meyers make no factual averments about Williams as it relates to the pipeline repair and reconstruction in Lycoming County or the October 2021 storm and flooding. For Williams, the Meyers note only that Transco "is a wholly owned subsidiary of [Williams]."[12]

## B.    Procedural History

On August 22, 2022, the Meyers initiated the suit, advancing a negligence claim against U.S. Pipeline (Count I) and claims of vicarious liability against Transco and Williams (Counts II and III, respectively).[13] The Complaint was originally filed in the Court of Common Pleas of Lycoming County, but the Defendants removed the action to federal court.[14] On October 18, 2022, Transco and Williams filed a motion to dismiss the vicarious liability claims.[15] That motion has been fully briefed and is now ripe for disposition.[16]

## II.    LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v.*

---

[12]   *Id.* ¶ 7.
[13]   Doc. 1-2 (Compl.).
[14]   Doc. 1 (Notice of Removal).
[15]   Doc. 5 (Mot. to Dismiss).
[16]   *See* Doc. 9 (Transco & Williams Br.); Doc. 10 (Meyers Opp.); Doc. 11 (Transco & Williams Reply).

*Twombly*[17] and *Ashcroft v. Iqbal*,[18] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[19] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) assume the veracity of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[20]

## III.   ANALYSIS

The instant motion concerns only Counts II and III—the claims against Transco and Williams. Although both claims allege vicarious liability, they are predicated on distinct legal theories. The Court therefore addresses each count in turn.

### A.   Transco (Count II)

In Count II, the Meyers seek to hold Transco vicariously liable for the allegedly negligent actions and inaction by U.S. Pipeline, the independent

---

[17]   550 U.S. 544 (2007).
[18]   556 U.S. 662 (2009).
[19]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[20]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotation marks, brackets, and citations omitted).

contractor Transco hired to reconstruct its pipelines crossing through Lycoming

County.[21] But the Meyers' Complaint contains insufficient factual allegations to

sustain this claim.

Pennsylvania courts have long recognized the "general rule" that although

"an employer may be held responsible for negligent acts of its servants/employees,

it will not be held liable for harm caused by acts of independent contractors."[22]

That said, there are three "narrow exceptions" to this general rule: (1) "the owner

has retained control of the work designated to the contractor"; (2) "the work

creates a peculiar unreasonable risk of harm [or] danger to others unless

precautions are taken"; or (3) "the owner negligently selected a contractor."[23]

Here, the Meyers invoke the first exception, arguing that Transco retained

control over U.S. Pipeline's reconstruction efforts.[24] But for this, they cite to only a

single allegation: "Upon information and belief, [Transco] retained the right of

control over the means, methods[,] and the manner by which the pipeline repair

work was to be performed by [U.S. Pipeline]."[25] According to Transco and

Williams, this is not a "factual allegation"; it is instead "a formulaic recitation, or

---

[21]   Doc. 1-2 (1-3 (Compl.) ¶¶ 40–49.
[22]   *Lutz v. Cybularz*, 607 A.2d 1089, 1091 (Pa. Super. 1992); *see also Minch v. KDG Rental Inc.*, 2019 WL 5212419, at *6 (Pa. Super. Oct. 16, 2019) (affirming *Lutz*'s continued legal validity).
[23]   *Chambers v. Bob's Discount Furniture*, 2021 WL 3472436, at *2 (M.D. Pa. Aug. 6, 2021) (Wilson, J.) (citing *Hart Trucking Repair v. Robb H, Inc.*, 2015 WL 7282631, at *15 (Pa. Super. May 11, 2015)).
[24]   *See* Doc. 10 (Meyers Opp.) at 4–6.
[25]   *Id*. at 5 (citing Doc. 1-2 (Compl.) ¶ 43).

conclusory allegation, of the retained control exception, which assumes the very

fact [the Meyers] are required to plead."[26] The Court agrees. As district courts

within this circuit have consistently held, such rote recitations of the legal

requirement, without supporting factual allegations, are insufficient to sustain

vicarious liability claims concerning the purported negligence of independent

contractors.[27] Count II is therefore dismissed.

### B.    Williams (Count III)

For Count III, the Meyers attempt to extend liability from Transco to its

parent company, Williams.[28] But as with the vicarious liability claim against

Transco, this count lacks the requisite factual support to survive dismissal.

The law treats parent corporations and their subsidiaries as distinct legal

entities.[29] Accordingly, a parent corporation "is not normally liable for the

wrongful acts or contractual obligations of a subsidiary even if or simply because

---

[26]   Doc. 11 (Transco & Williams Reply) at 2.

[27]   *See, e.g., Abraham v. Greater New Castle Community Federal Credit Union*, 2016 WL 1161217, at \*5 (W.D. Pa. Mar. 23, 2016) (dismissing vicarious liability claim concerning conduct of independent subcontractor because the plaintiff's allegations regarding the defendant's control over the subcontractor's work—"[u]pon information and belief, [the defendant] retained control over the manner in which the work on [the plaintiffs'] property was performed"—were "entirely conclusory"); *Chambers*, 2021 WL 3472436 at \*2 (dismissing vicarious liability claim because the plaintiff "fail[ed] to plead that [the defendant] retained control over the work of [its independent contractor]"; rejecting the plaintiff's argument that "it would be improper and premature to dismiss [the claim] at this point in time because discovery has not taken place").

[28]   *See* Doc. 1-2 (Compl.) ¶¶ 50–60.

[29]   *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems" that a parent corporation . . . is not liable for the acts of its subsidiaries.") (citing Douglas & Shanks, *Insulation from Liability Through Subsidiary Corporation*, 39 Yale L.J. 193 (1929)).

the parent wholly owns the subsidiary."[30] Courts will, however, pierce the

corporate veil and hold the parent company liable if it "so dominates the activities

of the subsidiary that it is necessary to treat the subsidiary as an agent or 'alter ego'

of the parent company."[31] At the motion to dismiss phase, plaintiffs seeking to

pierce the corporate veil on an alter ego theory of liability "must allege some facts

beyond mere evidence of ownership."[32] Absent "factual averments" demonstrating

that the parent and subsidiary "actually functioned as a single entity," dismissal is

appropriate.[33]

The Meyers predicate their vicarious liability claim against Williams on an

alter ego theory of liability.[34] To support this claim, however, they point only to the

---

[30] *Berkey v. Experian PLC*, 2022 WL 704613, at *4 (E.D. Pa. Mar. 9, 2022) (internal quotation marks and citation omitted).

[31] *Id*. (internal quotation marks, brackets, and citation omitted); *see also Hyjurick v. Commonwealth Land Title Insurance Co.*, 2012 WL 1463633, at *4 (M.D. Pa. April 27, 2012) (Munley, J.) ("When plaintiffs seek to pierce the corporate veil of a wholly owned subsidiary corporation on an alter ego theory of liability, they 'must essentially demonstrate that in all aspects of the business, the [parent and subsidiary] corporations actually functioned as a single entity and should be treated as such.'") (quoting *Pearson v. Component Technology Corp.*, 247 F.3d 471, 485 (3d Cir. 2001)).

[32] *Hyjurick*, 2012 WL 1463633 at *5; *see also Blair v. Infineon Technologies AG*, 720 F. Supp. 2d 462, 470–72 (D. Del. 2010) (finding the plaintiffs' alter ego allegations—including pleadings that the parent company "carrie[d] out the [subsidiary's] management and corporate functions," "installed three of its own officers or board members to officer or board member positions [for the subsidiary]," and "reported the [subsidiary's] earnings and losses on a consolidated basis in its own financial statements"—as sufficient to overcome a motion to dismiss).

[33] *Hyjurick*, 2012 WL 1463633 at *4–5; *see also Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639, 643–44 (E.D. Pa. 2011) (dismissing vicarious liability claim against parent company when the only allegations supporting alter ego liability were that the parent is a Pennsylvania corporation and the owner of the subsidiary).

[34] *See* Doc. 10 (Meyers Opp.) at 6.

allegation that "Transco is a wholly owned subsidiary of [Williams]."[35] They contend that this allegation, standing alone, is "sufficient" to establish that Williams "dominates the activities of Transco."[36]

That's simply incorrect. Factual pleadings indicating "mere evidence of ownership" are not enough to sustain a vicarious liability action against a parent company on alter ego grounds.[37] Because the Complaint is devoid of any factual allegations indicating that Williams and Transco "actually functioned as a single entity," the claim against Williams cannot proceed.[38] Count III is dismissed.

## IV.    CONCLUSION

In Counts II and III, the Meyers seek to hold a parent company and its subsidiary liable for harm allegedly caused by an independent contractor hired by the subsidiary. The law, however, generally disfavors vicarious liability in these contexts. There are exceptions to these general principles, but plaintiffs invoking such exceptions must make factual averments demonstrating their applicability. The Meyers failed to do so. Accordingly, Transco and Williams's motion to dismiss is granted.

Because this dismissal is based on pleading deficiencies, it is without prejudice. The Court grants the Meyers leave to plead over; to the extend they can

---

[35]    *Id*. (citing Doc. 1-2 (Compl.) ¶ 7).
[36]    *Id*.
[37]    *See Hyjurick*, 2012 WL 1463633 at *5.
[38]    *Id*. at *4.

remedy the identified deficiencies with additional factual allegations, they may do so.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge